Joseph J. Tabacco, Jr. (No. 75484)
Christopher T. Heffelfinger  (No. 118058)
BERMAN DeVALERIO
One California Street, Suite 900
San Francisco, California 941111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
          cheffelfinger@bermandevalerio.com

C. Oliver Burt, III (*Pro Hac Vice*)
Manuel J. Dominguez (*Pro Hac Vice*)
BERMAN DeVALERIO
4280 Professional Centre Drive, Suite 350
Palm Beach Gardens, FL  33410
Telephone: (561) 835-9400
Facsimile: (561) 835-0322
Email: cburt@bermandevalerio.com
          mdominguez@bermandevalerio.com

*Attorneys for Plaintiffs*

*[Additional counsel appear on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOE 1, DOE 2, and KASADORE RAMKISSOON, on Behalf of Themselves and all other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> AOL LLC, <br><br> Defendant. | CASE NO. C 06-5866 SBA <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT AOL LLC's RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date:  April 27, 2010 <br> Time:  1:00 p.m. <br> Courtroom: 1 <br> Judge:  Hon. Saundra Brown Armstrong |

# TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL BACKGROUND .................................................................................. 1

ARGUMENT .................................................................................................................................... 3

I.  AOL'S MOTION VIOLATES THE STANDARDS GOVERNING
A RULE 12(c) MOTION. ...................................................................................................... 3

II.  PLAINTIFFS HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF. ............ 4

III.  THE COMPLAINT PROPERLY STATES A CLAIM AND ALLEGES INJURY
UNDER THE CLRA. ............................................................................................................ 9

A.  Plaintiffs Allege a Cognizable Injury Under the CLRA. ........................................... 10

B.  Any Dismissal of Plaintiffs' Claim for Damages for Failure to Comply with
the Pre-suit Notice Requirement of § 1782(a) Should Be Without Prejudice. .......... 12

IV.  PLAINTIFFS PROPERLY ALLEGE A VIOLATION OF THE UCL AND THAT THEY
WERE INJURED AS A RESULT OF AOL'S ACTIONS. ..................................................... 14

V.  THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF THE FAL AND
THAT PLAINTIFFS WERE INJURED AS A RESULT OF AOL'S CONDUCT. ................. 15

VI.  PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF THE CRA. .............. 16

VII.  ALTHOUGH PLAINTIFFS' CLAIMS DO NOT SOUND IN FRAUD, THEY COMPLY
WITH BOTH RULES 8 AND 9(b) ...................................................................................... 17

A.  Plaintiffs' Claims Do Not Sound in Fraud. ............................................................... 17

B.  Even If the Claims Did Sound in Fraud, They Are Nonetheless Pled with
Sufficient Particularity. .............................................................................................. 19

C.  The Complaint Adequately Pleads Both Reliance and Causation. ............................ 19

CONCLUSION .............................................................................................................................. 21

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................... 20

*Baas v. Dollar Tree Stores, Inc.*,
    No. C 07-03108 JSW,
    2009 U.S. Dist. LEXIS 57531 (N.D. Cal. June 18, 2009) ...................................................................... 6

*Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004) ............................................................... 8

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) ................................................. 14, 18

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) .................................................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................. 17

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) .................................................................... 8, 11

*Bristow v. Lycoming Engines*,
    No. CIV S-06-1947 LKK/GGH,
    2007 WL 1106098 (E.D. Cal. Apr. 10, 2007) .................................................................................. 21

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) ................................................. 17

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) ................ 3

*Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006) .................................................. 15

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................... 13, 14, 20

*Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) ........................................ 9

*Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ........................................ 21

*Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359 (9th Cir. 2009) ............................. 10, 11

*Citizens for Responsibility & Ethics in Washington v. Exec. Office of the President*,
    587 F. Supp. 2d 48 (D.D.C. 2008) .................................................................................................. 6

*City & County of S.F. v. Tutor-Saliba Corp.*,
    No. C 02-5286 CW,
    2005 U.S. Dist. LEXIS 46590 (N.D. Cal. Mar. 17, 2005) ................................................................. 6

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) ........................................................................................ 6

*City of Oakland v. Hotels.com LP*, 572 F.3d 958 (9th Cir. 2009) ......................................... 12

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006).............................. 10, 11

*Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009)........................... 10

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) ............... 16, 21

*Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706 (Cal. 2000) ......................... 20

*Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004)........................................ 4

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099 (9th Cir. 2007)..................... 14

*Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121 (C.D. Cal. 2006) ........................... 11

*Deitz v. Comcast Corp.*,
  No. C 06-06352 WHA,
  2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006) .................................... 12

*Doe I v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) .................................................. 2

*Doe v. Dep't of Veterans Affairs*, 474 F. Supp. 2d 1100 (D. Minn. 2007),
  *aff'd*, 519 F.3d 456 (8th Cir. 2008),
  *cert. denied*, 129 S. Ct. 1032 (2009)........................................................ 6

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) ............................... 3

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................. 14, 18

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) ............................................... 3

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) ........... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................ 4

*Galindo v. Financo Fin., Inc.*,
  No. C 07-03991 WHA,
  2008 U.S. Dist. LEXIS 82773 (N.D. Cal. Oct. 3, 2008) .................................... 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989)..................... 3

*Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008) .............................................. 20

*Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114 (9th Cir. 2009) ............................... 15

*Holloway v. Best Buy Co.*,
  No. C 05-5056 PJH,
  2009 U.S. Dist. LEXIS 50994 (N.D. Cal. May 28, 2009)...................................... 3

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................. 20

*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008).......... 12, 18, 19

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ........................................................... 14, 20, 21

*Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889 ( 2007). ........................................................... 20

*Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582 (1984) ........................................................... 13

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ........................................................... 16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................ 15, 17, 18

*Keilholtz v. Superior Fireplace Co.*,
   No. C 08-00836 CW,
   2009 U.S. Dist. LEXIS 30732 (N.D. Cal. Mar. 30, 2009) ........................................................... 12

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005),
   *aff'd on other grounds*, 252 Fed. App. 777 (9th Cir. 2007) ........................................ 13, 20

*Leoni v. State Bar*, 39 Cal. 3d 609 (1985) ........................................................... 15

*Lorenzo v. Qualcomm Inc.*,
   No. 08cv2124 WQH,
   2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ........................................................... 21

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ........................................ 10, 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................... 10, 11

*Marolda v. Symantec Corp.*,
   No. C 08-05701 MHP,
   2009 WL 2252125 (N.D. Cal. July 28, 2009) ........................................................... 17, 19

*Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282 (2002) ........................................ 14, 21

*Mayfield v. United States*, 588 F.3d 1252 (9th Cir. 2009),
   *amended by* 2010 U.S. App. LEXIS 6015 (9th Cir. Mar. 24, 2010) ........................................ 6, 7, 8

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) ........................................................... 21

*Md. Minority Contractors Ass'n v. Lynch*,
   Nos.  98-2655, 99-1272,
   2000 U.S. App. LEXIS 1636 (4th Cir. Feb. 7, 2000) ........................................................... 8

*Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295 (Cal. 2009) ........................................ 10, 11, 13

*Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891 (N.D. Cal. 1993) .......................................... 3

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009) ....................................... 12, 13

*Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39 (2003) ............................................................ 10

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) .......................................... 9, 17, 18

*O'Brien v. Camisasca Auto. Mfg., Inc.*, 161 Cal. App. 4th 388 (2008),
    *review granted on other grounds,* 187 P.3d 886 (Cal. 2008),
    *review dismissed,* 219 P.3d 152 (Cal. 2009) .......................................................................... 13

*O'Shea v. Littleton,* 414 U.S. 488 (1974) .......................................................................................... 4

*Outboard Marine Corp. v. Super. Ct.,* 124 Cal. Rptr. 852 (Cal. Ct. App. 1975) .............................. 13

*Pac. W. Group, Inc. v. Real Time Solutions,* 321 Fed. Appx. 566 (9th Cir. 2008) ......................... 3

*People v. Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119 (1989) ......................................... 21

*People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654 (1998) ...................................... 15

*Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629 (7th Cir. 2007) ....................................................... 9

*Ruiz v. Gap, Inc.,* 622 F. Supp. 2d 908 (N.D. Cal. 2009) .............................................................. 9

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ....................................................................... 19

*Shein v. Canon U.S.A., Inc.*,
    No. CV 08-07323 CAS,
    2009 U.S. Dist. LEXIS 94109 (C.D. Cal. Sep. 22, 2009); ....................................................... 14

*Shin v. BMW of N.A.*,
    No. CV 09-398 AHM,
    2009 WL 2163509 (C.D. Cal. July 16, 2009) ......................................................................... 15

*Sisley v. Sprint Communs. Co.*, 284 Fed. Appx. 463 (9th Cir. 2008) ......................................... 11

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) .......................................... 18

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142 (2009) .............................................................. 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................... 17, 18, 19

*Walter v. Hughes Communs., Inc.*,
    No. 09-2136 SC,
    2010 U.S. Dist. LEXIS 5859 (N.D. Cal. Jan. 26, 2010) ......................................................... 17

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)...................................................................... 10, 21

**Statutes**

18 U.S.C. § 2702 *et seq.*.................................................................................................................................. 2

Cal. Bus. & Prof. Code § 17200 *et seq.*........................................................................................................ 2, 14

Cal. Bus. & Prof. Code § 17204 .................................................................................................................. 15, 20

Cal. Bus. & Prof. Code § 17500 *et seq.*........................................................................................................ 2, 15

Cal. Bus. & Prof. Code § 17535 ...................................................................................................................... 20

Cal. Civ. Code § 1750 *et seq*......................................................................................................................... 2, 9

Cal. Civ. Code § 1760 ...................................................................................................................................... 18

Cal. Civ. Code § 1770(a)............................................................................................................................... 9, 17

Cal. Civ. Code § 1770(a)(14).............................................................................................................................. 9

Cal. Civ. Code § 1770(a)(7)................................................................................................................................ 9

Cal. Civ. Code § 1780(a)............................................................................................................................... 9, 20

Cal. Civ. Code § 1780(a)(3)............................................................................................................................... 20

Cal. Civ. Code § 1782(a)................................................................................................................................... 12

Cal. Civ. Code § 1782(c)................................................................................................................................... 12

Cal. Civ. Code § 1782(d)................................................................................................................................... 12

Cal. Civ. Code § 1798.80 *et seq.*................................................................................................................. 2, 16

Cal. Civ. Code § 1798.81 ................................................................................................................................. 16

Cal. Civ. Code § 1798.81.5(a) ......................................................................................................................... 16

**Other Authorities**

Black's Law Dictionary (8th ed. 2004)............................................................................................................ 20

**Rules**

Fed. R. Civ. P. 8(a)(2)....................................................................................................................................... 17

Plaintiffs submit this memorandum in opposition to the renewed motion of Defendant AOL LLC ("AOL") for judgment on the pleadings ("Motion").   For the reasons discussed below, the Motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

For a ten-day period in late July 2006, AOL published on its website approximately 20 million internet search queries of Plaintiffs and roughly 658,000 other AOL Members without their consent.   Complaint ¶ 16.[1]   These search queries, collected and stored by AOL during a three-month period in the spring of 2006, contained AOL Members' personal and private information, including such sensitive information as their names; financial account numbers; passwords and user names; addresses; credit card numbers; social security numbers; driver license numbers; and their struggles with such intensely personal matters as drug and alcohol addiction, sexual abuse, sexual identity, domestic violence, mental illness, and medical conditions.   ¶¶ 19, 20.   By the time AOL realized its error and removed the database from its website, the damage to AOL Members had already been done:   their internet search queries had already been downloaded and reposted on the internet and had essentially become public record.   ¶¶ 17, 21.   AOL Members who have been identified through their search inquiries have been subjected to public scrutiny, embarrassment, obloquy and ridicule.   ¶ 21.

AOL's publication of this highly personal and intimate information on the internet constituted the most extensive database of private internet searches ever made available for the general public to view and download.   AOL Members conducted their search queries with the expectation and understanding that AOL would keep these searches private and confidential.   AOL Members paid a fee to AOL for its service, which included assurances by AOL that Members' internet use would be private, held in confidence, and disclosed only with Members' prior consent.   Indeed, AOL marketed itself as a "Safer More Secure" provider.   ¶¶ 28-32.   Having profited from Members' subscription payments and also from advertising revenues that AOL received as a result of these searches, AOL nevertheless revealed that its promise of security was a sham, by disseminating on the internet its Members'

---

[1] The Complaint is cited herein as "¶ _".

private search data without their consent.  ¶¶ 11, 14, 15-23.  To AOL Members' great detriment, AOL not only enabled internet users to access and exploit its Members' secrets, but has sat by idly as other websites continue to display this sensitive information, despite AOL's legal ability to compel its removal.  ¶¶ 24-27.

In September 2006, Plaintiffs filed a seven-count class action complaint against AOL, alleging, on behalf of a nationwide class of AOL Members, a violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2702 *et seq.* (Count I) and a common law claim of unjust enrichment (Count VI). Additionally, Plaintiffs brought five claims on behalf of a sub-class of California AOL Members, including a common law claim of public disclosure of private facts (Count VII) and several California consumer statutory claims.  Count II alleges a violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; Count III alleges a violation of the Customer Records Act ("CRA"), Cal. Civ. Code § 1798.80 *et seq.*; Count IV asserts a claim under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and Count V alleges a claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §  17200 *et seq.*  On February 12, 2007, this Court dismissed the Complaint for improper venue, and on January 16, 2009, the Ninth Circuit reversed and remanded.  *See Doe I v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009).

AOL then filed a motion in this Court to "implement the Ninth Circuit's mandate," arguing that only the California statutory claims could be pursued in this Court and that Plaintiffs' other claims could only be brought in Virginia state court.  In Orders dated July 6, 2009 and February 2, 2010, this Court agreed with AOL and dismissed Counts I, VI and VII.  Plaintiffs have filed a Petition for Writ of Mandamus in the Ninth Circuit seeking reinstatement of those counts.  In the interim, AOL has moved to dismiss Counts II through V, based on its contention that Plaintiffs:  (1) lack standing to seek injunctive relief; (2) did not comply with the 30-day notice provision of the CLRA; (3) fail to plead that they suffered any injury; (4) fail to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b); (5) fail to plead reliance or causation; and (6) fail to plead the requisite elements of a claim under the CRA.  These

are the same grounds on which AOL previously moved to dismiss these claims in its earlier motion for judgment on the pleadings, which this Court denied without prejudice in its February 2, 2010 order. Now, as before, AOL's arguments have no merit. The Complaint clearly alleges facts establishing Plaintiffs' standing to seek injunctive relief; properly alleges that AOL's conduct caused injury and damages long recognized under California law; and pleads the requisite elements for violations of the CLRA, UCL, FAL and CRA. Accordingly, AOL's Motion must be denied.

<u>**ARGUMENT**</u>

**I.      AOL'S MOTION VIOLATES THE STANDARDS GOVERNING A RULE 12(c) MOTION.**

A Rule 12(c) motion for judgment on the pleadings challenges the legal sufficiency of claims asserted in the complaint. *Holloway v. Best Buy Co.,* No. C 05-5056 PJH, 2009 U.S. Dist. LEXIS 50994, at *7 (N.D. Cal. May 28, 2009) (Hamilton, J.). The Court must therefore accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009); *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.,* 249 F.R.D. 334, 337 (N.D. Cal. 2008) (Armstrong, J.). The motion is properly granted only when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Fleming,* 581 F.3d at 925; *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989).[2]

In its Motion, AOL unabashedly disregards the foregoing legal standards by reciting "facts" in the "Background" and introductory sections of its Motion that appear nowhere in the Complaint. For example, AOL claims that it posted its Members' private search data "without cost" on an "academic website designed . . . for computer scientists" due to "the potentially great public

---

[2] A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and leave to amend should be granted unless amendment would be futile. *Pac. W. Group, Inc. v. Real Time Solutions,* 321 Fed. Appx. 566, 569 (9th Cir. 2008) (quoting *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989)); *Moran v. Peralta Cmty. Coll. Dist.,* 825 F. Supp. 891, 893 (N.D. Cal. 1993) (Conti, J.). This is Plaintiffs' first Complaint. Accordingly, should the Court find any claim to be insufficiently pleaded, Plaintiffs request leave to amend. Contrary to AOL's contention, *see* Motion at 15 n.15, any defects in pleading can indeed be cured, and consequently, there is no basis to dismiss the Complaint with prejudice.

1    benefit" of doing so and in the hope that "sharing" the data with "scientists" would enhance the

2    "search experiences for all Internet users and not just AOL members."  Motion at 2, 3 (purporting

3    to cite ¶¶ 17, 23).  None of these assertions appear anywhere in the Complaint.  AOL also claims

4    that the Complaint alleges that it "*may* be possible to infer the identity of certain people and the

5    contents of their searches by manipulating and *painstakingly analyzing those queries*."  Motion at 4

6    (emphasis added) (purporting to cite ¶¶ 20, 23).  The Complaint alleges no such thing.  To the

7    contrary, the Complaint alleges that Members' personal information was and continues to be readily

8    obtainable on the internet, as evidenced by a *New York Times* article that tracked down one AOL

9    Member who explained how her "whole personal life" had been revealed by AOL on the internet.  ¶

10   23.  Under the foregoing Rule 12(c) standards, AOL does not get to rewrite the facts to make itself

11   look better.  It must take the facts as it finds them in the Complaint.

        Assuming, as this Court must, the truth of the Complaint's allegations, the Complaint

12   properly establishes Plaintiffs' standing both under Article III and the California statutes on which

13   their claims are based, that they suffered injury, and that AOL violated the CLRA, CRA, FAL and

14   UCL.

15

16   **II.     PLAINTIFFS HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF.**

        To seek injunctive relief, a plaintiff must show that:  (1) he is under threat of suffering an "injury in

17   fact" that is concrete, particularized, actual and imminent; (2) the injury is fairly traceable to the challenged

18   action of the defendant; and (3) it is likely that a favorable judicial decision will prevent or redress the injury.

19   *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009); *Friends of the Earth, Inc. v. Laidlaw Envtl.*

20   *Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000); *Covington v. Jefferson County,* 358 F.3d 626, 637-38 (9th

21   Cir. 2004).[3]

22

23      Contrary to AOL's contention, *see* Motion at 6, the Complaint establishes that Plaintiffs are under a

24   real and imminent threat of injury because AOL continues to store the personally identifiable information

25   ─────────────────

26   [3] There is no requirement, as AOL asserts, that Plaintiffs "plead an ongoing injury" to meet the injury-
     in-fact requirement.  *See* Motion at 6.  Rather, as AOL acknowledges, a plaintiff need only allege

27   "*continuing, present adverse effects*" resulting from defendant's conduct.  Motion at 5 (emphasis
     added) (citation omitted).  *See O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974) (past "exposure to

28   illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if
     unaccompanied by any continuing, present adverse effects").

that it released to the public in July 2006 and, additionally, has taken no steps to retrieve the data, block third-party access to the data, or prevent similar disclosures from happening again.  Specifically, the Complaint alleges that although AOL eventually pulled the information from its website, by the time it had, the data had already been downloaded, reposted and made searchable at several websites, thus becoming a permanent public record.  ¶¶ 1, 21.  Indeed, a current search on the internet, using the words "AOL search data," results in a number of websites disclosing and discussing the data.  Some websites reveal the raw data; others allow the public to search the data, identify AOL Members by name and their unique identification numbers, and "create a platform and invite the public to openly criticize and pass judgment on AOL members based on their searches," thereby subjecting AOL Members to "public inquiry, obloquy and ridicule."  ¶¶ 17, 21.

As alleged in the Complaint, "AOL's response has been to do nothing.  AOL has not even bothered to notify its members that their private communications have been released."  ¶ 23.  "[It] has failed to block its own search engine from further disclosing the Member Search Data. . . .  *AOL could program its search engine not to provide results linking to* [third-party] *websites.  AOL, however, has not done so.*"  ¶ 24 (emphasis added).  "Nor has one of AOL's owners, Google, blocked from its search results the third-party websites posting the copies of the Member Search Data."  ¶ 25.  *See also* ¶ 27 (AOL has done nothing "to help [these] members . . . .  [Its] only response, if any, was to offer the victimized member a free month of AOL service, a service which AOL is now offering for free.").  Furthermore, "AOL has failed to enforce the terms of this license against third-party websites that are republishing the Member Search Records to the detriment of AOL's members."  ¶ 26.

The Complaint also alleges, upon information and belief, that AOL "continues to collect and disseminate the very same type of search data that it compromised in late July, 2006" and "without the knowledge of its members, has a business practice of recording and storing each and every Internet search query made by each of its members."  ¶¶ 1, 12.  *See also* ¶¶ 15, 55, 70.

The foregoing facts establish that Plaintiffs are clearly at risk of suffering real and imminent additional injury—the information is still out there, there are websites devoted to retrieving it, AOL continues to collect personally identifiable information that could again be disclosed, yet AOL has taken no steps whatsoever to minimize or prevent additional injury to the 685,000 members whose search queries were already revealed nor has it taken steps to prevent this from happening again.  The Complaint seeks an

injunction requiring AOL to:  (1) ensure that the Member search data does not appear as search results in internet search engines; (2) take all necessary steps to enforce its license prohibiting commercial and non-research use of Members' search data; (3) no longer store or maintain records associated with Members' and customers' internet searches on AOL's search engine; and (4) destroy all such records in its possession, custody, or control.  *See* Complaint, Prayer for Relief.

AOL's response to the foregoing is to assert that it is unlikely to post Members' search data on its website again, and, therefore, Plaintiffs lack standing.  Motion at 6.  In making this argument, AOL ignores decisions establishing Plaintiffs' standing.  *See, e.g., Doe v. Dep't of Veterans Affairs,* 474 F. Supp. 2d 1100, 1103 (D. Minn. 2007), *aff'd,* 519 F.3d 456 (8th Cir. 2008), *cert. denied,* 129 S. Ct. 1032 (2009) ("the systematic gathering, recording, and storage of enormous amounts of personal information that can be easily retrieved presents a threat to personal privacy on a vastly different scale than the occasional loose-lipped office gossip"); *City & County of S.F. v. Tutor-Saliba Corp.*, No. C 02-5286 CW, 2005 U.S. Dist. LEXIS 46590, at *45-46 (N.D. Cal. Mar. 17, 2005) (Wilken, J.) (plaintiffs had standing to seek injunction against defendant where they faced a real threat that defendant would again bid for and obtain public works contracts from plaintiffs by using the same unfair business tactics they had used before); *Citizens for Responsibility & Ethics in Washington v. Exec. Office of the President*, 587 F. Supp. 2d 48, 61 (D.D.C. 2008) (plaintiffs had standing to seek injunction to restore deleted emails where, absent injunctive relief, even more emails would be lost in the future).  Instead, AOL relies on inapposite decisions such as *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983), in which the Supreme Court held that the plaintiff lacked standing because he could not show he was in imminent danger of again being subjected to an unlawful chokehold by the Los Angeles Police Department.[4]

The Ninth Circuit's recent decision in *Mayfield v. United States,* 588 F.3d 1252 (9th Cir. 2009), *amended by* 2010 U.S. App. LEXIS 6015 (9th Cir. Mar. 24, 2010), ignored by AOL, directly supports Plaintiffs' assertion that they have suffered and continue to suffer an actual and imminent injury.  In *Mayfield,* the plaintiff sued the United States government after he was arrested—and subsequently released—in connection with the March 11, 2004 terrorist bombings in Madrid, Spain, after the FBI

---

[4] *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2009 U.S. Dist. LEXIS 57531 (N.D. Cal. June 18, 2009) (White, J.), is similarly distinguishable, *see* Motion at 6, because the plaintiffs in that case were no longer employed by the defendant, yet were seeking an injunction against their former employer.

determined that Mayfield's prints matched those found at the scene (a finding that was disputed by Spanish authorities). *Id.* at 1254-55. Following Mayfield's release, he filed suit challenging the constitutionality of several provisions of the Foreign Intelligence Surveillance Act ("FISA"), as amended by the Patriot Act. He thereafter reached a settlement agreement with the government, which awarded him compensatory damages but precluded him from seeking injunctive relief; any action by Mayfield would be limited to seeking declaratory relief regarding the alleged unconstitutionality of FISA. *Id.* at 1256. Mayfield subsequently filed suit, claiming that "he continued to suffer injury because the government refused to identify and destroy all materials derived from the FISA searches and seizures, and that he feared future uses of the materials as well as other future applications of FISA against him and his family." *Id.* at 1256-57 (footnote omitted).

Defending against the claim for declaratory relief, the government argued that Mayfield lacked Article III standing to pursue his claim. The government acknowledged that Mayfield had been subjected to surveillance, searches and seizures authorized by FISA but "that it acted under a unique set of circumstances that [were] highly unlikely to recur" and that "any possibility that it [would] use the derivative [FISA] materials in its possession was 'wholly speculative.'" *Id.* at 1258-59. Mayfield argued in response that he "continues to suffer harm as the result of the FISA activities" and "that the retention by government agencies of materials derived from the seizures in his home and office constitutes an ongoing violation of his constitutional right to privacy." *Id.* at 1259.

The district court granted summary judgment in Mayfield's favor, and the government appealed. On appeal, the Ninth Circuit, addressing the issue of standing, observed that a plaintiff must establish three constitutional elements of standing: (1) he must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) the plaintiff must establish a causal connection between the injury and defendant's conduct; and (3) the plaintiff must show a likelihood that the injury will be redressed by a favorable decision. *Id.* at 1257. The court further noted that "a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Id.* at 1258.

Applying that test of standing, the Ninth Circuit agreed with the district court that Mayfield had alleged and was continuing to suffer "an actual, ongoing injury" "by the very fact of the

1   government's retention" of the FISA materials and thus had standing to request injunctive relief.  *Id.*

2   at 1258-60.  The court held, however, that Mayfield lacked standing because he could not satisfy the

3   third prong of the standing test—the ability to redress his injury.  The court found that a declaratory

4   judgment was unlikely to redress his injury, because such a judgment would not require the

5   government to destroy the derivative FISA materials in its possession.  *Id.* at 1260-61.

Here, as in *Mayfield,* AOL's retention of Plaintiffs' data constitutes an "actual, ongoing

7   injury" that entitles Plaintiffs to seek injunctive relief, notwithstanding AOL's contention that it

8   acted under a unique set of facts that were unlikely to recur.  *See* Motion at 5-6.  *Mayfield* is directly

9   on point and fully supports Plaintiffs' standing here.[5]

AOL's only other argument is to assert, in a footnote, that its Members should seek relief against

12  third-parties instead of AOL.  *See* Motion at 6 n.3.  This argument is neither a defense nor does it demonstrate

13  that Plaintiffs lack standing, because, as just discussed, there are steps that AOL *could* take to prevent ongoing

14  injury to its Members, but it refuses to do so.  Moreover, its reliance on *Bano v. Union Carbide Corp.,* 361 F.3d

15  696, 717 (2d Cir. 2004), is misplaced.  In that case, the defendant's ability to comply with an injunction would

16  have been "dependent on [obtaining] permission from an entity that [was] not a party to [the] lawsuit and that,

17  therefore, [could not] be subject to the district court's injunction."  *Id.* at 717.  Here, AOL does not need the

18  third-party websites' "permission" to take legal action against those parties to prevent them from re-publishing

19  AOL Members' personal and private search data.[6]

20

21  _____

22  [5] As discussed *infra,* the Complaint also adequately alleges injury under the California statutes on
    which Plaintiffs' claims are based, and therefore they have standing to sue under those statutes.  *See*

23  *Birdsong v. Apple, Inc.,* 590 F.3d 955, 959-60 & n.4 (9th Cir. 2009) (to have standing under the
    UCL and CLRA, plaintiffs must allege injury in fact and the loss of money or property).

24  [6] AOL also cites *Maryland Minority Contractors Ass'n v. Lynch,* Nos.  98-2655, 99-1272, 2000 U.S.

25  App. LEXIS 1636 (4th Cir. Feb. 7, 2000) (unpublished), *see* Motion at 5, a completely inapposite,
    unpublished decision from the Fourth Circuit, which held that plaintiffs had failed to establish a concrete and

26  particularized injury sufficient to confer standing where they asserted only "vague allegations" of
    "unspecified 'stigmatic' and emotional injuries" stemming from their failure to be chosen as

27  minority contractors, without attempting to "elaborate on th[o]se allegations."  Here, the Complaint
    amply pleads the injury suffered by AOL Members when they paid a fee to AOL with assurances

28  that their private information would be kept confidential, only to discover that this information had
    been published on the internet, subjecting these 658,000 Members to ridicule, embarrassment, and
    harassment.  ¶¶ 11-32.

1    Having alleged (1) an actual and imminent threat of injury, (2) traceable to AOL's actions, and (3)

2    steps that AOL could take to minimize such injury, Plaintiffs have amply demonstrated Article III standing.

3    *See Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002) (holding that "the

4    possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes

5    'injury in fact'"); *Ruiz v. Gap, Inc.,* 622 F. Supp. 2d 908, 912-13 (N.D. Cal. 2009) (plaintiff had Article III

6    standing "based on [plaintiff's] increased risk of identity theft") (citing *Cent. Delta*, 306 F.3d at 947, and

7    *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 634 (7th Cir. 2007) (which held that plaintiffs had standing

8    because "'the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms

9    the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent

10   the defendant's actions.'").[7]

11   Accordingly, AOL's Motion to dismiss for lack of Article III standing should be denied.

12   **III.   THE COMPLAINT PROPERLY STATES A CLAIM AND ALLEGES INJURY**
           **UNDER THE CLRA.**

13

14   The CLRA, Cal. Civ. Code § 1750 *et. seq.*, protects consumers from "unfair methods of competition

15   and unfair or deceptive acts or practices . . . ."  *Id.* § 1770(a).  The CLRA does not require proof of fraud.

16   *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) (Patel, J.).  The act is to be

17   "liberally construed and applied to promote its underlying purposes," Cal. Civ. Code § 1760, allowing relief

18   for all consumers who "suffer[ ] *any* damage as a result of the use or employment" of unfair or deceptive

19   conduct.  *Id.* § 1780(a) (emphasis added).

20   The Complaint alleges that AOL violated the CLRA's prohibition against misrepresenting "that

21   goods or services are of a particular standard, quality, or grade."  *Id.* § 1770(a)(7); ¶¶ 53-54.[8]  AOL

22   represented that its service came with stringent standards for protecting privacy, by representing, *inter alia,*

23

24   [7]  *See also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 160-61 (4th Cir. 2000)
      (en banc) ("The Supreme Court has consistently recognized that threatened rather than actual injury can satisfy

25   Article III standing requirements."); *Baur v. Veneman,* 352 F.3d 625 (2d Cir. 2003) (plaintiff pleaded a sufficient
      "present, immediate risk" of exposure to bovine spongiform encephalopathy (BSE) to support Article III

26   standing, even though BSE had not been detected in the United States, because the injury-in-fact requirement is
      qualitative, not quantitative, and the more drastic the injury, the lesser the probability one needs to show to

27   establish standing).

28   [8]  Through its misleading privacy policy disclosure, AOL also violated the CLRA's prohibition on
      "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does
      not have or involve, or which are prohibited by law."  Cal. Civ. Code § 1770(a)(14).

that "AOL's Internet service is safe, secure, and private." ¶ 54.  AOL's advertising boasted that AOL "provides consumers with a Safer More Secure Online experience, which includes additional safeguards for personal information and privacy." ¶ 28.  Its privacy policy stated that:  "Your AOL Network information will not be shared with third parties unless it is necessary to fulfill a transaction you have requested, in other circumstances in which you have consented," and even AOL's "business partners and advertisers" would only "receive aggregate data about groups of AOL Network users."  ¶ 29.   Contrary to these representations, AOL disclosed to the public Plaintiffs' and class members' sensitive personal and financial information without their consent.  AOL's actions were unfair, deceptive, and done in a manner "likely to mislead a reasonable consumer" as to how personal information would be treated.  *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006) ("Conduct that is 'likely to mislead a reasonable consumer' . . . violates the CLRA.") (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003)).  These allegations sufficiently allege a violation of the CLRA.  In any event, whether this conduct in fact violated the CLRA cannot be resolved on the pleadings.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("*Gerber*") (noting that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer").

### A.      Plaintiffs Allege a Cognizable Injury Under the CLRA.

Plaintiffs have also sufficiently alleged that AOL's unlawful conduct caused them damages.  To state a claim under the CLRA, a plaintiff needs only to allege that "any damage" to him or her resulted from the defendant's conduct, "however slight[]" it may be.  *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359, 361 (9th Cir. 2009).  Section 1780(a) of the CLRA provides broad authorization to bring suit and does not even require that plaintiffs suffer actual pecuniary damages; they must only overcome the "low" threshold of showing some "palpable" harm caused by a defendant's statutory violation.  *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299, 303 (Cal. 2009).  This minimal damage requirement, coupled with the low standard for pleading injury that governs in all cases, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009), creates an extremely low threshold.  And the Ninth Circuit has repeatedly held that such damages are sufficiently pleaded where plaintiffs allege that they paid the defendant for a product or service and did not receive what they bargained for.  *See, e.g.*, *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007)

(identifying plaintiff's allegation that "he did not receive the full benefit of his contract" as a compensable injury); *Chavez*, 340 Fed. Appx. at 361 (finding allegations that plaintiff "did not receive what he had paid for" sufficiently pleaded injury); *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1155 (C.D. Cal. 2006) (holding a plaintiff stated a claim where he alleged he did not receive "the advertised[] benefit from taking classes at DeVry."); *see also Sisley v. Sprint Communs. Co.*, 284 Fed. Appx. 463, 466-67 (9th Cir. 2008) (holding that allegations that certain charges paid by plaintiff were wrongful were sufficient to show damage from a breach of contract).

The Complaint here alleges that Plaintiffs "suffered harm and lost money or property as a result of . . . paying service and other fees and charges to AOL and suffering the public disclosure of their private information." ¶¶ 64, 69.[9]  AOL's violation of Plaintiffs' privacy and failure to provide safe, secure and private internet service damaged Plaintiffs in that they did not receive the protection they paid for.  As these allegations indicate, Plaintiffs suffered pecuniary damage in purchasing a service that promised to protect their privacy but did not.  *See* ¶ 32.  Plaintiffs are therefore entitled to restitution.  *See, e.g., Colgan*, 135 Cal. App. 4th at 697-98.[10]  Just as the plaintiffs in *Lozano*, *Chavez, Daghlian*, and *Sisley* sufficiently pleaded that they had suffered damages where they alleged that they paid for a product or service but did not receive what they were promised, Plaintiffs here properly pleaded damages by alleging that they paid AOL to provide a service that included privacy and security protection, but AOL did not provide it.[11]

---

[9] Although these two paragraphs were contained in the sections describing Plaintiffs' claims under the FAL and UCL, they are equally applicable to Plaintiffs' claims under the CLRA and put AOL on notice of the type of harm alleged.

[10] A detailed discussion of the causation chain is not required in the Complaint, as AOL contends.  *See Lujan,* 504 U.S. at 561 (at pleading stage, courts "'presume that general allegations embrace those specific facts that are necessary to support the claim'") (citation omitted).

[11] Indeed, *Meyer*, the primary case on which AOL relies, distinctly illustrates what differentiates this case from those in which courts have found that an injury was not sufficiently alleged.  In that case, the only injury plaintiffs allegedly suffered was that defendant's agreement included unconscionable terms that it could not enforce without violating a statute.  *Meyer,* 200 P.3d at 299. These contractual terms, however, had not been enforced against plaintiffs, so the only injury they claimed was a supposed encroachment of their statutory rights.  *Id.* at 301.  Similarly, in *Birdsong,* 590 F.3d at 961, plaintiffs alleged that iPods could damage a person's ears if played too loudly, but they did not allege that their ears had been damaged, and although they claimed to not have received what they paid for, they did not allege that iPods were sold under the representation that they could be played for long periods of time with causing ear damage.

**B.   Any Dismissal of Plaintiffs' Claim for Damages for Failure to Comply with the Pre-suit Notice Requirement of § 1782(a) Should Be Without Prejudice.**

Although Plaintiffs requested "actual damages" in the CLRA claim without providing AOL with the formal, pre-suit notice required by Cal. Civ. Code §1782(a), *see* ¶ 56, there is no merit to AOL's contention that the damages claim should be dismissed with prejudice. First, the Complaint here seeks not only damages, but also injunctive relief and restitution, and pre-suit notice is required only for "an action for damages" but not where, as here, the Complaint seeks restitution and injunctive relief. *See* §§ 1782(a), (c) and (d); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2008) (no notice required where complaint seeks injunctive relief, restitution and disgorgement rather than damages); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1260 (2009) ("*This notice requirement need not be complied with in order to bring an action for injunctive relief.*"). The CLRA specifically authorizes plaintiffs to file suit for other relief and then to add a claim for damages after giving notice. Where, as here, an action seeks injunctive relief, "[n]ot less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), *the consumer may amend his or her complaint without leave of court to include a request for damages*." § 1782(d) (emphasis added). Dismissing Plaintiffs' damages claim with prejudice would therefore deny them this statutorily authorized right, in contravention of the CLRA's statutory scheme.

For that reason, courts in this District have refused to employ the "draconian sanction" of dismissing a CLRA claim with prejudice for failure to provide notice of a damage request. *Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 U.S. Dist. LEXIS 82773, at *14 (N.D. Cal. Oct. 3, 2008) (Alsup, J.); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 U.S. Dist. LEXIS 94333, at *16 (N.D. Cal. Dec. 21, 2006) (Alsup, J.). Instead, they have held that plaintiffs may move to amend the complaint to add a claim for damages once they comply with the notice requirement of § 1782. *Galindo, supra*; *Deitz, supra*; *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732, at *8 (N.D. Cal. Mar. 30, 2009) (Wilken, J.) (noting that courts are split as to whether dismissal of damages claim under CLRA should be with or without prejudice, but following *Deitz* as more persuasive). *See also City of Oakland v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) ("Claims should be dismissed with prejudice only when it is clear that

no amendment could cure a defect in the complaint.").[12]

Thus, AOL is simply wrong when it asserts that "there is no support for plaintiffs' request that the dismissal [of the claim for damages] should be without prejudice."  Motion at 8.  Not only is there ample support in this District, as evidenced by decisions such as *Keilholtz, Galindo,* and *Deitz,* but in addition, the California Court of Appeal recently held in *Morgan v. AT&T* that where the plaintiff fails to comply with the pre-complaint notice requirements in seeking damages under the CLRA, dismissal with prejudice is *not* warranted:

> The federal district court cases upon which [defendant] AT&T relies for its assertion that failure to comply with the notice requirement requires dismissal *with prejudice* fail to properly take into account the purpose of the notice requirement.  That requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time.  (*See, e.g., Meyer v. Sprint Spectrum L.P., supra,* 45 Cal. 4th [634,] 642 [(2009)]; *Kagan v. Gibraltar Sav. & Loan Assn., supra,* 35 Cal. 3d [582,] 590 [(1984)].)  A dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy this purpose.  Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements.  If, before that 30-day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages.

177 Cal. App. 4th at 1261.[13]  Notably, AOL fails to cite any California state case holding that failure to provide notice of a damage claim under the CLRA requires dismissal with prejudice.

Additionally, those federal district courts that have required dismissal with prejudice have reasoned that allowing plaintiffs to amend the complaint after providing the requisite notice under the CLRA would "undermine the possibility of early settlement."  *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007).  Here, however, the Complaint alleges that AOL was in fact given notice of the problem but failed to offer any assistance to AOL Members.  *See* ¶ 27 ("AOL members who sought assistance from AOL

---

[12] Notably, the court's dismissal in *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd on other grounds,* 252 Fed. App. 777 (9th Cir. 2007), on which AOL relies, *see* Motion at 8, "applie[d] only to the named Plaintiffs."  *Id.* at 1196.  Thus, even under *Laster,* other not-yet-named class members who did comply with the CLRA's notice requirement could bring a damage claim against AOL.

[13] Thus, while AOL cites cases for the proposition that § 1782(a) applies literally and must be strictly enforced, *see, e.g., Outboard Marine Corp. v. Super. Ct.,* 124 Cal. Rptr. 852, 858-59 (Cal. Ct. App. 1975); *O'Brien v. Camisasca Auto. Mfg., Inc.,* 161 Cal. App. 4th 388, 406 (2008), *review granted on other grounds,* 187 P.3d 886 (Cal. 2008), *review dismissed,* 219 P.3d 152 (Cal. 2009), literal and strict enforcement does not mean that dismissal with prejudice is required.  It simply means that plaintiffs must first comply with that provision before their action for damages under the CLRA can proceed.

about the disclosure of the Member Search Data were not offered any assistance. AOL's only response, if any, was to offer the victimized member a free month of AOL service, a service which AOL is now offering for free."). Plaintiffs submit that not only did this notice "substantially compl[y] with the purposes of the notice requirement," *Shein v. Canon U.S.A., Inc.*, No. CV 08-07323 CAS, 2009 U.S. Dist. LEXIS 94109, at *19 (C.D. Cal. Sep. 22, 2009); the Complaint also makes clear that AOL had no intention of rectifying the problem despite being given an opportunity to do so. As such, AOL can hardly be said to have been deprived of an opportunity for an "early settlement." *Cattie*, 504 F. Supp. 2d at 950.

For all of these reasons, Plaintiffs request that the Court dismiss, *without* prejudice, only that portion of their CLRA claim that relates to damages and allow them an opportunity to satisfy the notice provision of § 1782(a).[14]

## IV.   PLAINTIFFS PROPERLY ALLEGE A VIOLATION OF THE UCL AND THAT THEY WERE INJURED AS A RESULT OF AOL'S ACTIONS.

The UCL, Cal. Bus. & Prof. Code §17200 *et seq.*, broadly prohibits acts or practices that are (1) fraudulent, (2) unlawful *or* (3) unfair. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009) ("*Tobacco II*") (the substantive right protected under the UCL is the right to protection from fraud, deceit and unlawful conduct). Conduct is "fraudulent" under the UCL if it is likely to deceive the public. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1261 (2006) (cited by *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) (Alsup, J.)); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1291 (2002). The "unlawful" prong of the UCL applies to "anything that can be properly called a business practice and that at the same time is forbidden by law." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007). For example, a practice that violates the CLRA is also "unlawful" under the UCL. *See Falk*, 496 F. Supp. 2d at 1098.[15] Conduct is "unfair" if it "offends an established public

---

[14] AOL concedes that this argument applies only the damages component of Plaintiffs' CLRA claim. *See* Motion at 9.

[15] Plaintiffs also allege that AOL's conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*. the provisions of which require commercial websites and online services that collect consumers' information to post a privacy policy accurately describing what information is collected and with whom it will be shared, and prohibits disclosure of consumers' information in any other manner. ¶ 68(b). AOL ignores the fact that ¶ 68(b) alleges a violation of § 22575 "*et seq.*" and argues that since it posted a privacy policy, it cannot have violated § 22575. Motion at 13 n.12. This contention is groundless, because while AOL may have posted some policy, that policy did not inform consumers that their information would be disclosed to all Internet users. *See* ¶¶ 15, 16, 21, 33. As such, the facts alleged in the Complaint

policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 658 (1998) (citation omitted) (alteration in original).[16]  *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("The UCL prohibits 'unlawful, unfair or fraudulent business act[s] or practice[s]' and 'unfair, deceptive, untrue or misleading advertising.'") (citation omitted) (alteration in original).

The Complaint sufficiently alleges violations under each of the three UCL prongs.  AOL engaged in conduct that was (1) fraudulent in that it was likely to (and did) deceive the public regarding AOL's internet security and privacy practices, (2) unlawful in that it violated federal and state law, and (3) unfair in that AOL collected service fees for premium internet services by a purported "leader and innovator in Internet security and privacy" but then violated its Members' privacy by disclosing private information about them to the public.  ¶¶ 16-31, 68, 73, 74.  Furthermore, Plaintiffs sufficiently allege that they have standing and have suffered injury under the UCL, as they "suffered harm and loss of money or property as a result of such unfair and unlawful business practices, including paying the service and other fees and charges to AOL and suffering the public disclosure of their private information."  ¶ 69.  *See* Cal. Bus. & Prof. Code § 17204.  AOL's throwaway argument that the Complaint fails to allege "***any*** injury as a result of AOL's alleged conduct" (Motion at 10) is simply not true.

## V.   THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF THE FAL AND THAT PLAINTIFFS WERE INJURED AS A RESULT OF AOL'S CONDUCT.

The FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, makes it unlawful to disseminate advertising that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.  *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009).  *See also Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985) (FAL prohibits "not only advertising which is false, but also advertising which[,] although

---

establish both that AOL failed to post an accurate privacy policy in violation of the requirements of Cal. Bus. & Prof. Code § 22575(b)(1) and that AOL violated the privacy policy it disclosed to consumers, in violation of § 22576.  Plaintiffs further allege that AOL violated 18 U.S.C. § 2702(a)(1) and/or (a)(2), as well as the CRA and the FAL, and committed the common law tort of public disclosure of private facts.  *See* ¶ 68(c)-(f).

[16] Alternatively, conduct is "unfair" under the UCL if the consumer injury is substantial, the injury is not outweighed by countervailing benefits to consumers, and consumers themselves could not reasonably avoid the injury.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) (cited by *Shin v. BMW of N.A.*, No. CV 09-398 AHM, 2009 WL 2163509, at *2 (C.D. Cal. July 16, 2009)).

true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"). Thus, to state a claim under the FAL, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983)).

Here, there is no doubt that the public was likely to be deceived by AOL's privacy- and security-related advertisements. *See, e.g.,* ¶ 28 ("In advertisements AOL 'sings its own praises' as it lays claim to being a leader and innovator in Internet security and privacy for its members."). *See also* ¶¶ 29-32. AOL demonstrated that its Members' trust was unfounded, by treating Members' privacy as inconsequential when it released their highly sensitive financial and personal data into the public domain. ¶¶ 16-20. Plaintiffs properly allege that AOL's privacy-related advertisements were deceptive, untrue, and misleading, and violated the FAL.

## VI.    PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF THE CRA.

Plaintiffs also properly allege a violation of the CRA, Cal. Civ. Code § 1798.80 *et seq.*, which was enacted "to ensure that personal information about California residents is protected." *Id.* at § 1798.81.5(a). AOL violated the CRA by failing to take "reasonable steps" to safeguard its Members' search data, including personal information such as names, addresses, credit card numbers, social security numbers, financial account numbers, and passwords. *See* ¶¶ 16-20; Cal. Civ. Code § 1798.81.[17] Because Plaintiffs paid for a service they did not receive—a safe, secure and private internet service that would protect their private information—Plaintiffs indeed suffered injury and are entitled to damages under § 1798.84(b) (providing that

---

[17] AOL argues that Plaintiffs fail to state a claim under the CRA because AOL was not trying to permanently discard the personal information.   Motion at 14.   However, § 1798.81 applies to information "which is no longer to be *retained* by the business" (emphasis added), and the dictionary defines "retain" as to "hold secure or intact."   <http://www.merriam-webster.com/dictionary/retain>.   Thus, if a business is no longer going to hold its customers' personal information securely and intact, the CRA requires that business to dispose of the information responsibly, § 1798.81, which AOL failed to do.

that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages"). *See* Motion at 14.[18]

## VII. ALTHOUGH PLAINTIFFS' CLAIMS DO NOT SOUND IN FRAUD, THEY COMPLY WITH BOTH RULES 8 AND 9(b)

### A. Plaintiffs' Claims Do Not Sound in Fraud.

While Federal Rule of Civil Procedure 9(b) requires that all averments of fraud be stated with particularity, Plaintiffs' CLRA, FAL and UCL claims categorically do not sound in fraud. "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns,* 567 F.3d at 1124 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)). *See Walter v. Hughes Communs., Inc.,* No. 09-2136 SC, 2010 U.S. Dist. LEXIS 5859, at *31 (N.D. Cal. Jan. 26, 2010) (Conti, J.) ("One need not plead fraud in order to state a claim under the CLRA, UCL, or FAL."). Accordingly, the Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but instead requires Plaintiffs to allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face," *id.* at 570.

Plaintiffs' allegation that AOL violated Cal. Civ. Code § 1770(a)(7) does not require allegations of fraud. *See Kearns,* 567 F.3d at 1125 ("fraud is not a necessary element of a claim under the CLRA and UCL") (quoting *Vess,* 317 F.3d at 1103); *Marolda v. Symantec Corp.*, No. C 08-05701 MHP, 2009 WL 2252125, at *8-9 (N.D. Cal. July 28, 2009) (Patel, J.) (unlike subsection (a)(7) of the CLRA, subsection (a)(9) "requires pleading fraud, since it specifically requires intent to defraud"). *See also Nordberg,* 445 F. Supp. 2d at 1097 (holding that Rule 9(b) was not strictly applicable to plaintiff's CLRA claims because the CLRA is not necessarily a fraud statute).[19] In alleging a violation of the CLRA, Plaintiffs do not use the term

---

[18] Plaintiffs agree that the statutory penalty of $3,000 per violation applies only to violations of § 1798.83. *See* Motion at 15 (citing § 1798.84(c)).

[19] Some courts have held that, because they involve (mis)representations, these CLRA subsections necessarily involve fraud. *See, e.g., Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 811 (2007). Plaintiffs urge this Court to take the view espoused by courts in this District that it would be illogical to apply the elements of common law fraud to all CLRA claims involving representations. With the possible exception of subsection (a)(21), each type of conduct proscribed by the CLRA involves a representation of some kind. Cal. Civ. Code § 1770(a). Plaintiffs' position is consistent with the goal that the CLRA be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business

1  "fraudulent" or plead elements of a fraud claim such as intent or justifiable reliance. Nor do they allege a

2  "unified course of fraudulent conduct," unlike in *Kearns*. *See Kearns,* 567 F.3d at 1125, 1127 (concluding

3  that plaintiff alleged a "unified course of fraudulent conduct" in alleging that "Ford Motor Company

4  conspire[d] with its dealerships to misrepresent the benefits of its CPO program").[20] Instead, Plaintiffs allege

5  that AOL violated § 1770(a)(7) by conduct constituting "unfair methods of competition or unfair or

6  deceptive acts or practices." ¶ 54.[21]

7       The same is true of Plaintiffs' UCL claim under § 17200, which alleges not fraud, but "unfair

8  business practices" and "unlawful" conduct by AOL in violating state and federal laws. ¶ 68.[22] Nor do

9  plaintiffs use the terms "fraud" or "fraudulent" in alleging a FAL claim. ¶¶ 62-65.

10      In a substantially similar case, *In re Mattel, Inc.,* plaintiffs alleged violations of, *inter alia,* the CLRA

11  and UCL resulting from representations defendant made about the general quality of its toys that plaintiffs

12  alleged were defective and unsafe. 588 F. Supp. 2d at 1114. Because "[p]laintiffs merely allege[d] that the

13  representations were likely to deceive and that [p]laintiffs were damaged by the deception," the court denied

14  defendants' motion to dismiss. *Id.* at 1118. The court held that Rule 9(b) did not apply to plaintiffs' CLRA

15  and UCL claims because they did not sound in fraud. *Id.* Although the plaintiffs did use the term

16

17  practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code
§ 1760. Requiring CLRA claims to satisfy the same pleading requirements as fraud would "require that

18  plaintiffs prove more than the statute itself requires [and] would undercut the intent of the legislature in creating
a remedy separate and apart from common-law fraud." *Nordberg*, 445 F. Supp. 2d at 1097.

19  [20] *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) (Hendersen, J.), is distinguishable for the

20  same reason. *See id.* at 995, 998 (holding that plaintiffs were required to plead reliance and satisfy Rule 9(b)
where they alleged a "unified course of fraudulent conduct" and fraudulent, "affirmative misrepresentations,

21  such as claims that [defendant's satellite telephone] service '[w]orks virtually ANYWHERE you can see
Sky'") (second alteration in original).

22  [21] *See Vess*, 317 F.3d at 1105 (stating that "the 'indispensable elements of a fraud claim include a false

23  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages'" and holding that
some of plaintiff's claims did not sound in fraud because plaintiff "neither mentions the word 'fraud,' nor

24  alleges facts that would necessarily constitute fraud") (citations omitted).

25  [22] While Plaintiffs do allege that "[t]he acts, omissions, and practices alleged in the Complaint constitute a

26  continuous course of unfair, unlawful and/or fraudulent business practices," and include a catch-all item as to
any "[o]ther unfair, unconscionable, misleading or fraudulent conduct as alleged above," ¶ 68, this was not

27  intended to transform the otherwise non-fraud-related allegations into claims of fraud. Rather, Plaintiffs are
merely acknowledging that the Court could find that AOL's conduct could also constitute "fraud" as used in the
UCL. *See Bardin*, 136 Cal. App. 4th at 1261 (conduct is "fraudulent" under the UCL if it is likely to deceive

28  members of the public) (cited by *Falk*, 496 F. Supp. 2d at 1098).

"fraudulent" in describing the business practices that violated the UCL, the court held that "'fraudulent' under section 17200 is not the same as common law fraud—as section 17200 does not require a plaintiff to plead all of the elements of fraud." *Id.*

### B. Even If the Claims Did Sound in Fraud, They Are Nonetheless Pled with Sufficient Particularity.

Even assuming *arguendo* that some or all of Plaintiffs' claims did sound in fraud, the Complaint provides sufficient allegations to satisfy Rule 9(b).[23]  Rule 9(b) requires allegations that are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Clearly, Plaintiffs have alleged sufficient facts to place AOL on notice of its alleged misconduct, by alleging that on July 31, 2006, AOL packaged into a database and placed on its website approximately 20 million internet search queries of approximately 658,000 AOL Members who conducted internet searches from March through May 2006.  ¶ 16.  *See also* ¶¶ 15-22.  The Complaint alleges that it was AOL itself that made the misrepresentations; that these misrepresentations were made on AOL's website (and even sets forth the specific web page on which these representations appeared); and that these representations were false because AOL Members were falsely assured that AOL would protect their confidential information but instead posted that confidential information on the internet.  *See* ¶¶ 28-31.  As such, the Complaint alleges the "'who, what, when, where, and how' of the misconduct charged," *Vess*, 317 F.3d at 1106 (citation omitted), AOL's protestations notwithstanding.  Motion at 11.[24]

### C. The Complaint Adequately Pleads Both Reliance and Causation.

Contrary to AOL's contention, Plaintiffs clearly allege facts establishing that they suffered injury "as

---

[23] Of course, Plaintiffs would only be required to plead with particularity that portion of their claims that actually sounded in fraud. *Vess*, 317 F.3d at 1104-05 ("where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)"); *Marolda*, 2009 WL 2252125, at *3 (holding that where plaintiffs allege some fraudulent and some non-fraudulent conduct, only allegations of fraudulent conduct must meet Rule 9(b)).

[24] That AOL is fully aware of the misconduct alleged in the Complaint is evidenced by the fact that it has admitted in its Answer that it did indeed post AOL Members' Internet Search Data on its website.  *See* AOL's Answer ¶ 1.

a result of" AOL's actions and thus have adequately alleged reliance and causation. *See* Motion at 12 & n.9 (citing Cal. Civ. Code § 1780(a); Cal. Bus. & Prof. Code §§ 17535, 17204) (creating private rights of action for persons who suffer damage "as a result of" a violation of these statutes).[25]   Specifically, Plaintiffs allege that they lost money or property by paying for a service they did not receive as a result of AOL's violations of the FAL, UCL, and CLRA.   ¶¶ 64, 69.   *Cf. Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 856-58 (2008) (*see* Motion at 13) (ruling that plaintiff did not allege causation because he "did not allege he lost money or property as a result of Time's acts of alleged unfair competition").[26]

      Contrary to AOL's contention, reliance is "an essential element" of Plaintiffs' UCL claim only to the extent that Plaintiff's claim arises under the "fraud" prong of the UCL.[27]   Instead, Plaintiffs' non-fraud claims

---

[25] Although neither the CLRA nor the UCL contains a reliance element, they do require some sort of damage or injury.  Cal. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17204.  However, this does not necessitate individual reliance, as consumers can be injured by a representation irrespective of whether or not they personally rely on that representation. *See Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137, 1139 (C.D. Cal. 2005) (finding that Proposition 64 did not introduce a reliance requirement into the "as a result of" language of either UCL's § 17200 or FAL's § 17500 and describing examples of representations that could cause consumer harm despite a lack of individual reliance). Only UCL claims specifically brought under its fraud prong are required to plead actual reliance. *Tobacco II*, 46 Cal. 4th at 326.  AOL cites *Cattie* to support its argument that Plaintiffs must plead reliance, but *Cattie* itself acknowledges "a split of authority" on this issue. *See Cattie*, 504 F. Supp. 2d at 947 (contrasting *Annunziato* with *Laster*, 407 F. Supp. 2d at 1194).  Plaintiffs submit that *Annunziato* is the better reasoned decision and the one that comports with California's policy favoring consumer protection. *See Annunziato*, 402 F. Supp. 2d at 1136-39.

[26] The Complaint is far from "conclusory" on this point (*see* Motion at 13 n.10) and also alleges why Plaintiffs are entitled to restitution. ¶ 73 (alleging that it would be inequitable for AOL to retain the benefit of service fees paid by AOL Members for internet service).  Further, the Complaint shows the connection between payment of a fee to AOL and the release of the search data, by alleging that AOL collected this fee with assurances that it would keep Members' information confidential. *See* Motion at 14 n.13.  The CLRA, FAL and UCL each provide for restitution as a possible remedy, *see* Cal. Civ. Code § 1780(a)(3); Cal. Bus. & Prof. Code §§ 17535 & 17204), and "restitution" is "[a] body of substantive law in which liability is based . . . on the defendant's unjust enrichment" (Black's Law Dictionary 1339 (8th ed. 2004)).  AOL's argument that Plaintiffs' claims "fail" because they seek restitution, *see* Motion at 13 n.13, confuses available remedies with required elements under those statutes.  Neither case cited by AOL supports its contention that Plaintiffs must "quantify the portion of their fees that AOL is retaining unjustly." *Id.*  Plaintiffs need only allege that they paid money to AOL and did not receive what they bargained for. *See, e.g., Lozano*, 504 F.3d at 733.  Indeed, *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706 (Cal. 2000), cited by AOL, *see* Motion at 14 n.13, actually expanded the restitution available under the UCL to include even funds that were never in plaintiffs' possession. Furthermore, the portion of funds paid to AOL that were unjustly retained are indeed measurable and will be proven through expert testimony, *see* Fishkind Expert Report (submitted with Plaintiffs' motion for class certification), and following discovery. *See Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 917 ( 2007).

[27] The Complaint only uses the term "fraudulent" as one possible basis for relief under the UCL's unlawful prong after explicitly identifying five specific state and federal laws that were violated.   ¶ 68.   *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105-07 (N.D. Cal. 2007) (White, J.) (holding that claims

---

1    are judged under the "reasonable consumer" test—*i.e.*, whether the public is likely to be deceived; actual

2    deception or confusion is not required. *Comm. on Children's Television*, 35 Cal. 3d at 211; *People v. Dollar*

3    *Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 129 (1989); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 627

4    (C.D. Cal. 2008); *Gerber*, 552 F.3d at 938.  Here, AOL's members were likely to be deceived into believing

5    their communications were safe. ¶ 32.

6         Moreover, even where a claim is brought under the UCL's fraud prong, a plaintiff need not allege

7    specific facts demonstrating individualized reliance on particular misrepresentations; reliance need not be the

8    sole or even predominant factor influencing plaintiff's conduct; and a presumption or inference of reliance

9    arises wherever a misrepresentation is material. *Tobacco II*, 46 Cal. 4th at 327.  *See also Bristow v. Lycoming*

10   *Engines*, No. CIV S-06-1947 LKK/GGH, 2007 WL 1106098, at *7 (E.D. Cal. Apr. 10, 2007) ("Under the

11   UCL and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in

12   common law fraud, but of materiality") (citing *Mass. Mut.*, 97 Cal. App. 4th at 1288; *Chamberlan v. Ford*

13   *Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005) (Wilken, J.)).  The issue of materiality (and thus

14   reliance), is ordinarily a question of fact, *Tobacco II*, 46 Cal. 4th at 327, and a reasonable jury could find

15   AOL's assurances of privacy to be material in deciding whether to pay for AOL's service.  ¶¶ 16–33, 64, 69.

16   Consequently, Plaintiffs have adequately pleaded their claims under the UCL, FAL and CLRA.

## CONCLUSION

17

18        For all of the foregoing reasons, AOL's Rule 12(c) renewed Motion should be denied in its entirety.

19   Dated:  April 6, 2010                                    Respectfully submitted,

20

21                                                            **BERMAN DeVALERIO**

22

23                                                            By:  _____/S/_____
                                                                 Manuel J. Dominguez (*Pro Hac Vice*)

24

25

26

27   based on the "unfair" or "unlawful" prongs of the UCL need not allege reliance and need only allege
     "*causation* more generally"); *Lorenzo v. Qualcomm Inc.*, No. 08cv2124 WQH, 2009 WL 2448375, at *5
28   (S.D. Cal. Aug. 10, 2009) (same).  As discussed *supra, see* note 20, *Stickrath* sounded in fraud and thus is
     inapposite. *See* Motion at 12.

C. Oliver Burt, III (*Pro Hac Vice*)
4280 Professional Center Dr., Suite 350
Palm Beach Gardens, FL  33410
Telephone:  (561) 835-9400
Facsimile:  (561) 835-0322
Email: mdominguez@bermandevalerio.com
      cburt@bermandevalerio.com

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
One California Street, Suite 900
San Francisco, California 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermandevalerio.com
      cheffelfinger@bermandevalerio.com

LAW OFFICE OF RICHARD R. WIEBE
Richard R. Wiebe
One California Street, Suite 900
San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  weibe@pacbell.net

JAMES K. GREEN, P.A.
James K. Green
222 Lakeview Avenue, Suite 1650
West Palm Beach, FL 33401
Telephone: (561) 659-2029
Facsimile: (561) 655-1357
Email:  jameskgreen@bellsouth.net

*Counsel for Plaintiffs*